UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-23582-CIV-ALTONAGA/Simonton

A1 PROCUREMENT, LLC,

      Relator,

vs.

HENDRY CORPORATION, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on the Motion for Summary Judgment ("Defendants' Motion") [ECF No. 124] filed by Defendants, Hendry Corporation ("Hendry Corp."); Marine Construction Services, LLC ("Marine Construction"); Gulf Marine Repair Corporation ("Gulf Marine"); Joseph F. Cimino ("Cimino"); Claude R. Watts, Jr.; and Dennis Manelli ("Manelli") (collectively, "Defendants");[1] and the Motion for Partial and/or Complete Summary Judgment ("Relator's Motion") [ECF No. 126] filed by Relator, A1 Procurement, LLC ("Relator").[2]  The Court has carefully considered the parties' written submissions, the record, and applicable law.

---

[1]  On May 10, 2013, Defendants filed a Statement of Material Facts ("Defendants' SMF") [ECF No. 125]. On May 31, 2013, Relator filed an Amended Response to Defendants' Statement of Material Facts ("Relator's SMF Response") [ECF No. 170] together with a Response . . . ("Relator's Response") [ECF No. 169].  On June 10, 2013, Defendants filed a Reply . . . ("Reply") [ECF No. 177].

[2]  On May 10, 2013, Relator filed a Statement of Undisputed Material Facts ("Relator's SMF") [ECF No. 127].  On May 28, 2013, Defendants filed a Statement of Material Facts in Opposition . . . ("Defendants' SMF Response") [ECF No. 161] together with a Response . . . ("Defendants' Response") [ECF No. 160]. On June 7, 2013, Relator filed a Reply . . . ("Reply") [ECF No. 174].

## I. BACKGROUND[3]

This case is a qui tam action brought by Relator on behalf of itself and the United States of America accusing Defendants of misrepresenting Marine Construction[4] as a Service-Disabled Veteran-Owned Business Concern ("SDVO SBC") in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* As discussed at length in previous Orders, Relator alleges Defendants, inter-related entities with overlapping employees and owners, fraudulently represented Marine Construction as an SDVO SBC to the federal government in a number of bids and invoices. (*See generally* October 1, 2012 Order [ECF No. 51]; December 13, 2013 Order [ECF No. 61]; April 12, 2013 Order; June 24, 2013 Order). According to Relator, Marine Construction was not an SDVO SBC because it was not at least 51% owned and controlled by a service-disabled veteran as required by the applicable regulations. (*See* 2d Am. Compl. ¶¶ 50–63).

Defendants are in the business of repairing ships and have a history of contracting with the federal government. On October 27, 2010, Hendry Corp. bid on, and was awarded contract number HSCG80-11-Q-P45009 (the "Valiant I Contract"). (Relator's SMF ¶¶ 12–13). Relator then filed a bid protest, and Hendry Corp. withdrew its bid. (*See id.* ¶ 14). Thereafter, the Coast Guard cancelled the Valiant I Contract and re-solicited it as contract number HSCG80-11-Q-P45009A (the "Valiant II Contract"). (*See id.* ¶ 15).

---

[3] Unless otherwise noted, the facts presented in this section are undisputed. Many of the disputed facts are addressed in the Analysis section.

[4] Relator also brought claims against Defendants for misrepresenting Hendry Corp. as an SDVO SBC and a Veteran Owned Business ("VOB"); however, the Court dismissed all such claims for lack of subject matter jurisdiction. (*See* April 12, 2013 Order [ECF No. 109] (dismissing Counts I and II regarding the Hendry Corp. Claims); June 24 Order [ECF No. 195] (dismissing Count III regarding the Hendry Corp. Claims)). Although Gulf Marine is also named as a Defendant, Relator has not alleged Gulf Marine bid on or was awarded any contracts. (*See* Defs.' SMF ¶ 1; Relator's SMF Resp. ¶ 1). Similarly, no individual Defendants are alleged to have bid on or been awarded any contracts. (*See id.*).

In April 2011, Marine Construction bid on two government contracts: the Valiant II Contract, and contract number HSCG80-10-R-P45GK4 (the "270 Package Contract"). (*See id.* ¶ 16; Defs.' SMF ¶¶ 3, 5). Marine Construction was awarded both. (*See* Relator's SMF ¶ 21; Defs.' SMF ¶ 3; Valliant II Award, Affidavit of Dennis E. Manelli ("Manelli Affidavit"), Ex. A, at 8–48 [ECF No. 124-1];[5] 270 Package Award, Manelli Aff., Ex. B, at 49–93 [ECF No. 124-1]).

Thereafter, Relator filed bid protests insisting Marine Construction was ineligible to be represented as an SDVO SBC. (*See* Defs.' SMF ¶ 24; Relator's SMF ¶ 24; *see generally* Manelli Aff., Exs. D & E, at 104–148 [ECF No. 124-1]). Responses to the bid protests were filed[6] with the Small Business Administration ("SBA") regarding Marine Construction's eligibility to bid on and be awarded the Valiant II Contract and the 270 Package Contract. (*See* Defs.' SMF ¶¶ 25, 26, 30; Bid Protest Response, Minelli Aff., Ex. F, at 1–63 [ECF No. 124-2]).

As a result of the bid protests, the Coast Guard cancelled the 270 Package Contract before it was performed; thus Marine Construction neither performed any work thereon nor sought payment associated with the 270 Package Contract. (*See* Defs.' SMF ¶ 7; Relator's SMF Resp. ¶ 7). By contrast, while the Valiant II Bid Protest was pending, Marine Construction performed the Valiant II Contract, submitting six invoices to the Coast Guard for payment on the work completed.[7] (*See* Relator's SMF ¶¶ 25, 26; Marine Construction Valiant II Contract

---

[5]  The Manelli Affidavit and the several exhibits attached to it are collectively entered on the docket as two docket entries; as a result, and for ease of reference, the page numbers refer to the pagination assigned by the CM/ECF System. To the extent the parties provide identical copies of documents, the Court cites to the documents most easily referenced, without regard to the party providing the document.

[6]  The parties disagree whether Marine Construction filed the responses (*see* Defs.' SMF ¶ 25), or whether Hendry Corp. and GMR filed the responses on Marine Construction's behalf (*see* Relator's SMF Resp. ¶ 25).

[7]  While the parties dispute whether the Coast Guard exercised its discretion to allow Marine Construction to continue work on the Valiant II contract while the bid protest was pending (*see* Defs.' SMF ¶ 25; Relator's SMF Resp. ¶ 25), it appears undisputed that Marine Construction was given permission to continue work on the Valiant II Contract despite the pending bid protests.

Invoices, Relator's SMF, Ex. 13 [ECF No. 127-13]).   In total, the federal government paid Marine Construction $236,928.14 on the work performed under the Valiant II Contract.  (*See* Defs.' SMF ¶ 6; Relator's SMF Resp. ¶ 6).  Five of the six invoices were submitted before the SBA issued any determination on the bid protests.  (*See generally* Marine Construction Valiant II Contract Invoices (reflecting only one invoice dated after July 8, 2013)).

At issue in the bid protests was whether Marine Construction satisfied the requirement that an SDVO SBC be at least 51% owned or controlled by a service-disabled veteran.  (*See* Bid Protest Response, Manelli Aff., Ex. F, at 1–4).  On July 8, 2011, the SBA issued substantively identical determinations regarding both the 270 Package Contract and the Valiant II Contract, finding Marine Construction was not a valid SDVO SBC when it bid on both contracts (collectively, the "July SBA Determinations").[8]  (*See* 270 Package July SBA Determination, Relator's SMF Resp., Ex. 7, at 1 [ECF No. 170-7]; Valiant II July SBA Determination, Relator's SMF Resp., Ex. 8, at 1 [ECF No. 170-8]).[9]  While the 51% owner of Marine Construction, Clyde Rogers ("Rogers") was and is a service-disabled veteran, the SBA determined Rogers did not satisfy the SBA's control requirement.  (*See* Valiant II July SBA Determination 3–4 (finding the service-disabled veteran status and ownership requirements satisfied); *id.* at 7 ("Hendry, and not you, controls [Marine Construction].  For these reasons, I must conclude that a service-disabled veteran does not control [Marine Construction] as required by [applicable regulations].")).

Appeals of the July SBA Determinations were filed.[10]  (*See* Manelli Aff., Exs. H & L, at

---

[8]  Although the parties agree the SBA issued the July SBA Determinations, the parties dispute whether they were "initial" (Defs.' SMF ¶¶ 27, 31), or "final" (Relator's SMF Resp. ¶¶ 27, 31), determinations.  In any event the SBA stated Marine Construction "is not a [SDVO SBC]. . . .  This determination will be effective immediately and is final unless overturned on appeal or unless relief is granted under 13 C.F.R. [section] 125.27(g)."  (July SBA Determinations 1).

[9]  This Exhibit is incorrectly labeled "SBA OHA Determination (Valiant)" in Relator's SMF Response.

[10]  The parties quibble over which Defendant filed the appeals.

74–97, 143–167 [ECF No. 124-2]).  The SBA Office of Hearings and Appeals ("SBA OHA")

denied the appeals (collectively, the "SBA OHA Decisions").  *See In the Matter of: Marine*

*Construction Services, LLC*, SBA No. VET-218, 2011 WL 7140077, at *2 (S.B.A. Sept. 13,

2011) (denying Marine Construction's 270 Package Contract appeal as untimely); *In the Matter*

*of: Marine Construction Services, LLC* (the "SBA OHA Valiant II Decision"), SBA No. VET-

216, 2011 WL 5873012, at *9 (S.B.A. Aug. 23, 2011) (denying Marine Construction's Valiant II

Contract appeal).

At issue here is whether summary judgment is appropriate for Relator or Defendants on

Relator's FCA claims alleging Marine Construction was falsely represented as an SDVO SBC.

While Relator asserts the undisputed facts show it is entitled to summary judgment, Defendants

argue Relator cannot offer sufficient evidence to satisfy necessary elements of its claims.

## II. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).

"[T]he court must view all evidence and make all reasonable inferences in favor of the party

opposing summary judgment."  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000)

(en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "An issue of fact

is material if it is a legal element of the claim under the applicable substantive law which might

affect the outcome of the case."  *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008)

(quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks

omitted)).  "A factual dispute is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-

CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and alterations omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal alterations omitted) (quoting *Celotex*, 477 U.S. at 322).

## III. ANALYSIS

Defendants raise three principal arguments in support of their Motion: (1) Relator may not recover on the 270 Package Contract as the contract was cancelled and Defendants never performed any work or made any request or demand for payment thereon; (2) Relator cannot establish Defendants made an objectively false statement or claim; and (3) Relator cannot establish Defendants acted with the requisite scienter.  (*See* Defs.' Mot. 4–6).  Relator argues: (1) Defendants' misrepresentations in connection with the 270 Package Contract are actionable; (2) the July SBA Determinations and the SBA OHA Decisions conclusively show Defendants' representations were false; and (3) recent statutory amendments deem Defendants' misrepresentations willful, establishing Defendants acted with the requisite scienter.  (*See generally* Relator's Mot.; Relator's Resp.).  As the cross motions raise similar issues, the Court

addresses them together, following the structure of Defendants' Motion.

### A. Applicable Law

a. <u>The False Claims Act</u>

Relator's remaining claims allege violations of the FCA as amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"). *See* Pub. L. 111-21 §§ 4(a)(1), 4(f)(1)–(2). Under the applicable version of the FCA, liability is imposed on any person who:

> (A) knowingly presents, or causes to be presented, a fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]
>
> (C) conspires to commit a violation of [among others] subparagraph (A) [or] (B).

31 U.S.C. § 3729(a)(1)(A)–(C). The terms "knowingly" and "claim" are given special meaning under the FCA. "Knowingly" is defined as: "(i) ha[ving] actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(A)(i)–(iii). "Claim" is defined as "any request or demand . . . for money or property . . . that — (i) is presented to an officer, employee, or agent of the United States . . . ." *Id.* § 3729(b)(2)(A).

To establish liability under section 3729(a)(1)(A), a relator must demonstrate "'(1) a false or fraudulent claim[,] (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval, (3) with knowledge that the claim was false.'" *U.S. ex rel. Bibby v. Wells Fargo Bank, N.A.*, 906 F. Supp. 2d 1288, 1298 (N.D. Ga. 2012) (citation omitted). Although this framework was developed pre-FERA, it applies equally post-FERA. *See U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 342 n.19 (D. Mass. 2011)

("Courts considering [section] 3729(a)(1)(A) post-FERA, have applied the same standards as applied to [section] 3729(a)(1) pre-amendment." (citation omitted)).

By contrast, FERA substantively altered section 3729(a)(1)(B). *See id.* 342 n.20 (discussing the alterations to this section of the FCA under FERA). While some courts required a relator to demonstrate a defendant's specific intent to defraud pre-FERA, the statute now clarifies a relator need only show a defendant acted with "a 'knowing' frame of mind similar to that required under [3729(a)(1)(A)]." *Id.* at 343 (citations omitted). As a result, under both section 3729(a)(1)(A) and section 3729(a)(1)(B), a relator must show:

> "(1) [The] defendant made a false statement or engaged in a fraudulent course of conduct; (2) [] such statement or conduct was made or carried out with the requisite scienter; (3) [] the statement or conduct was material; and (4) [] the statement or conduct caused the government to pay out money or to forfeit money due."

*U.S. ex rel. Badr v. Triple Canopy, Inc.*, No. 1:11-CV-288 (GBL/JFA), 2013 WL 3120204, at *13 (E.D. Va. June 19, 2013) (some alterations omitted) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728–29 (4th Cir. 2010)); *see also U.S. ex rel. Wade v. DBS Invs., LLC*, No. 11-CV-20155, 2012 WL 3759015, at *3 (S.D. Fla. Aug. 29, 2012) (applying these factors to alleged post-FERA violations).

Finally, to maintain a conspiracy claim under the FCA, Relator must show:

> (1) [] the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) [] one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) [] the United States suffered damages as a result of the false or fraudulent claim[.]

*U.S. ex rel. St. Joseph's Hosp., Inc. v. United Distribs., Inc.*, No. CV410-096, 2013 WL 142700, at *6 (S.D. Ga. Jan. 11, 2013) (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).

### b.   The Service-Disabled Veteran Owned Small Business Concern Program

The government, recognizing it had done too little to assist service-disabled veterans, began the SDVO SBC Program to promote business between the United States and service-disabled veterans who own small businesses.   *See* 15 U.S.C. § 657b note, Veterans Entrepreneurship and Small Business Development Act of 1999, Pub. L. No. 106-50, § 101(3). In order to further promote service-disabled veterans doing business with the United States, Congress enacted the Veterans Benefits Act of 2003, which gave contracting officers the ability to award sole source and set-aside contracts to SDVO SBCs.   *See* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 308, 117 Stat. 2651 (2003).   The SDVO SBC contracting program is administered by the SBA, which has enacted regulations regarding the requirements for bidding on such contracts.   *See* Small Business Size Regulations, Government Contracting Programs, 69 Fed. Reg. 25265 (May 5, 2004); *see also Griswold v. Cnty. of Hillsborough*, 598 F.3d 1289, 1293–94 (11th Cir. 2010) ("The Veterans Act establishes the Procurement Program for Small Business Concerns Owned and Controlled by Service Disabled Veterans (SDVOSBC), which permits a contracting officer to award contracts on the basis of competition restricted to 'small business concerns owned and controlled by service-disabled veterans.'" (quoting 15 U.S.C. § 657f)).

The regulations set forth important definitions for the Service-Disabled Veteran-Owned Small Business Concern Program.   *See* 13 C.F.R. § 125.8.   In particular, an SDVO SBC is a concern:

> (1) Not less than 51% of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51% of the stock of which is owned by one or more service-disabled veterans;
>
> (2) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a service-disabled veteran

with permanent and severe disability, the spouse or permanent caregiver of such veteran; and

(3) That is small as defined by § 125.11.

*Id.* § 125.8(g).  Rather than requiring the SBA to certify that a business qualifies as an SDVO SBC prior to bidding, the SBA requires small businesses to self-certify their SDVO SBC status. *See* 13 C.F.R. § 125.15(a); Small Business Size Regulations, 69 Fed. Reg. 25265 ("[T]he SDVO SBC will be able to self-represent its status to the contracting activity as part of its offer.").  The one exception to this self-certification system is that contracting officers must pre-verify a concern is "small" under applicable regulations.  *See* 13 C.F.R. § 125.8(g)(3) (referring to 13 C.F.R. § 125.11); 13 C.F.R. § 125.11(b) ("If the contracting officer is unable to verify that the SDVO SBC is small, the concern shall be referred to the responsible SBA Government Contracting Area Director for a formal size determination in accordance with part 121 of this chapter.").  Within the context of this applicable law, the Court turns to the parties' arguments.

### B.  May Relator Recover on the 270 Package Contract?

Defendants argue although they bid on the 270 Package Contract, they never performed any work and never submitted any invoices for payments on the 270 Package Contract.  (*See* Defs.' Mot 13–14).  As a result, Defendants maintain such bidding does not constitute a "claim" that calls on the government fisc, which is a necessary requirement under the FCA.  (*See id.*).  Defendants are correct.

"A bid, by its very nature, does not request or demand monetary compensation.  It is one step removed from a request or demand for money — an offer made in the hope of acceptance." *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 335 (S.D.N.Y. 2004) (footnote call numbers omitted); *cf. Bibby*, 906 F. Supp. 2d at 1297 ("[T]he initial fraudulent conduct in obtaining a government guaranty creates an inchoate FCA violation that becomes choate if and when a loan

subsequently goes into default and results in a demand for government payment.").  The parties are in agreement Defendants did no work in connection with, and never demanded any payment on, the 270 Package Contract, as the Coast Guard cancelled the contract before it was performed. (*See* Defs.' SMF ¶ 7; Relator's SMF Resp. ¶ 7).  That Marine Construction was initially awarded the contract has no legal significance here — Defendants merely submitted a bid with no subsequent request or demand for money in connection therewith.  Consequently, Relator's claims in Counts I, II, and III that are premised upon the 270 Package Contract are not actionable, *see Taylor*, 345 F. Supp. 2d at 336, and summary judgment is granted.

### C.  Has Relator Established Defendants Made Any Objectively False Statement or Claim?

Relator insists the Court "must provide deference to the SBA's and SBA OHA's determinations that [Marine Construction] was not a valid VOSB and SDVOSB concern while bidding on the contract."  (Relator's Mot. 11 (footnote call number omitted)).  While Relator provides a string cite indicating courts generally afford deference to an agency's finding unless it is plainly erroneous or inconsistent with the regulation, Relator goes no further in describing how or why the agency determinations should conclusively determine the falsity of Defendants' statements here.  (*See* Relator's Mot. 11 n.8 (listing cases)).  Consequently, the Court does not address further whether such deference in this FCA action would be appropriate in the first instance.

Notwithstanding the July SBA Determinations and the SBA OHA Decisions, Defendants argue Relator has failed to establish Defendants made any objectively false representation. Defendants' argument is as follows: although the SBA determined Marine Construction was not at least 51% controlled by a service-disabled veteran, "it is unquestionably clear that when [Marine Construction] represented SDVO SBC status in bidding on the [Valiant II Contract] it

could not have 'known' [] it was not an SDVO SBC . . . and therefore any such SDVO SBC statement by [Marine Construction] was not objectively false for purposes of the FCA." (Defs.' Mot. 16).

Defendants' argument fails for two reasons. First, it is better suited to a challenge to Relator's satisfaction of the knowledge requirement, as falsity and knowledge do not necessarily go hand-in-hand. Certainly, a representation could be false even if Defendants did not know it to be so. Second, while Defendants take issue with the SBA's finding that Rogers did not control Marine Construction (*see* Defs.' Mot. 15–16), Defendants offer insufficient record evidence establishing Marine Construction was in fact "controlled" by Rogers as that term is interpreted under the applicable regulations. Consequently, Defendants fail to satisfy their burden to "inform the court of the basis for [their] motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1115 (internal quotation marks, alterations, and citation omitted). A factual dispute remains regarding whether Marine Construction was eligible to be represented as an SDVO SBC when such representations were made, and summary judgment on this issue is inappropriate. Nonetheless, the Court must consider whether Relator fails to satisfy an additional necessary element of its claims: knowledge.

### D.  Has Relator Established Defendants Acted with the Requisite Knowledge?

Relator and Defendants cross move for summary judgment regarding whether Defendants acted with the requisite knowledge. The Court must therefore determine if a genuine issue of material fact remains regarding whether Defendants: (1) had actual knowledge of the falsity of their representations when made; (2) acted in deliberate ignorance of the truth or falsity of the

information; or (3) acted in reckless disregard of the truth or falsity of the information.  *See* 31 U.S.C. § 3729(b)(1)(A)(i)–(iii); *U.S. ex rel. Chabot v. MLU Servs., Inc.*, No. 6:06-cv-1528-ORL-35KRS, 2010 WL 1539975, at *5 (M.D. Fla. 2010) ("[A] person acts 'knowingly' when that person has actual knowledge of a falsity, acts in deliberate ignorance of the falsity, or acts in reckless disregard of the truth or falsity.").  "Because the FCA does not proscribe fraudulent activity in general but rather prohibits the knowing submission of false claims, the requisite knowledge must be proved to exist not at just any time in the course of the parties' interactions but at the point at which a defendant submits its claims for payment."  *United States v. DRC, Inc.*, 856 F. Supp. 2d 159, 172 (D.D.C. 2012) (citations omitted).

According to Relator, Defendants' representation of Marine Construction as an SDVO SBC must be deemed willful under 15 U.S.C. section 632(w), and thus the knowledge requirement of its FCA claims is necessarily satisfied.  (*See* Relator's Resp. 3–4 (citation omitted)).  Relator insists, "the amended FCA's 'presumption of loss' rule deems [Defendants'] certifications . . . 'affirmative, willful, and intentional.'"  (*Id.*).  The statute provides:

(w) Presumption

(1) In general

In every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation.

(2) Deemed certifications

The following actions shall be deemed affirmative, willful, and intentional certifications of small business size and status:

CASE NO. 11-23582-CIV-ALTONAGA/Simonton

**(A)** Submission of a bid or proposal for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement reserved, set aside, or otherwise classified as intended for award to small business concerns.

**(B)** Submission of a bid or proposal for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement which in any way encourages a Federal agency to classify the bid or proposal, if awarded, as an award to a small business concern.

**(C)** Registration on any Federal electronic database for the purpose of being considered for award of a Federal grant, contract, subcontract, cooperative agreement, or cooperative research agreement, as a small business concern.

(3) Certification by signature of responsible official

(A) In general

Each solicitation, bid, or application for a Federal contract, subcontract, or grant shall contain a certification concerning the small business size and status of a business concern seeking the Federal contract, subcontract, or grant.

(B) Content of certifications

A certification that a business concern qualifies as a small business concern of the exact size and status claimed by the business concern for purposes of bidding on a Federal contract or subcontract, or applying for a Federal grant, shall contain the signature of an authorized official on the same page on which the certification is contained.

(4) Regulations

The Administrator shall promulgate regulations to provide adequate protections to individuals and business concerns from liability under this subsection in cases of unintentional errors, technical malfunctions, and other similar situations.

15 U.S.C. § 632(w) (emphasis in original). Relator's reliance on this statute for the proposition that "the post-FERA FCA's *scientor* [sic] requirement is deemed satisfied if a person submits a certification in a proposal or federal electronic database" (Relator's Resp. 3), is inapposite.

First, this section was not added to the FCA by the FERA amendments. Instead, the Small Business Jobs Act of 2010 added this section to the end of "Section 3 of the Small Business Act." Small Business Jobs Act of 2010, Pub. L. 111-240 § 1341, 124 Stat 2504. As such, it is not immediately apparent that this amendment to the "Definitions" section of the Small Business Act has any bearing whatsoever on Relator's causes of action brought under the FCA. Relatedly, the FCA specifically requires a relator to establish a defendant knowingly violated the statute, and includes a definition of knowingly. *See* 31 U.S.C. § 3729(a)–(b). As Defendants assert, "[t]he FCA has never been interpreted as a strict liability statute." (Defs.' Reply 4). Indeed, the Court is aware of no such interpretation and has found no authority interpreting 15 U.S.C. section 632(w) or the FCA as Relator suggests.

Second, the very language of 15 U.S.C. section 632(w) indicates Congress did not intend to make the FCA a strict liability offense. The Administrator is directed to "promulgate regulations to provide adequate protections to individuals and business concerns from liability under this subsection in cases of unintentional errors, technical malfunctions, and other similar situations." *Id.* § 632(w)(4). Here, Defendants may well have made an "unintentional error" under the statute in determining whether Marine Construction qualified as an SDVO SBC.

Third, by its terms, the statute creates a presumption of "loss" — not liability — only when a concern that is not small is misrepresented as small: "there shall be a *presumption of loss* to the United States . . . whenever it is established that a business concern *other than a small business concern* willfully sought and received the award by misrepresentation." *Id.* § 632(w)(1) (emphasis added). This provision simply does not apply when a small business truthfully represents its small size, but misrepresents another aspect of its status. The "[d]eemed certifications" provision supports this as certain submissions are deemed "certifications of *small*

*business size and status*," *id.* § 632(w)(2) (emphasis added), and focus on awards to "small business concern(s)," *id.* § 632(w)(2)(A)–(C). In addition, even if a misrepresentation of SDVO SBC status implicated this statute, it would not fulfill the "knowing" requirement of the FCA, but would simply create a "presumption of loss" to the government.

Fourth, and finally, the SBA's regulatory scheme supports the conclusion that 15 U.S.C. section 632(w) cannot be used to satisfy the knowledge requirement of the FCA here. A concern must self-certify it is an SDVO SBC, and the concern cannot receive an advance determination that its owner and controller qualifies as a service-disabled veteran. *See* Small Business Size Regulations, 69 Fed. Reg. 25265 ("[T]he SDVO SBC will be able to self-represent its status to the contracting activity as part of its offer."); *see also* 13 C.F.R. § 125.10 (describing "[w]ho [the] SBA consider[s] to control an SDVO SBC"). Conversely, it is necessary for the contracting officer to verify a concern is small in advance of awarding a contract. *See* 13 C.F.R. § 125.11(b) ("If the contracting officer is unable to verify that the SDVO SBC is small, the concern shall be referred to the responsible SBA Government Contracting Area Director for a formal size determination in accordance with part 121 of this chapter."). It follows that the provision only applies when a concern that is not small represents itself as small.

There is no allegation Marine Construction did not qualify as a small business under the applicable regulations. Thus, 15 U.S.C. section 632(w) has no bearing on whether Relator has established Defendants knowingly made false representations. Summary judgment in Relator's favor on this issue is improper. The Court next determines whether the undisputed material facts show Defendants did not act with the requisite knowledge.

Defendants raise two arguments in asserting the undisputed material facts establish they did not knowingly falsely represent Marine Construction as an SDVO SBC. First, Defendants

argue Relator is proceeding under an "implied legally false certification theory" of liability, which the Eleventh Circuit has limited to situations in which "the ineligible contractor *persists* in requesting payments it knows [] it is not entitled to." (Defs.' Mot. 19 (some emphasis omitted) (quoting *McNutt ex rel. U.S. v. Haleyville Med. Supp., Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005))). According to Defendants, even if Marine Construction was technically ineligible to be represented as an SDVO SBC when it submitted bids and invoices to the government, Defendants did not know of such ineligibility until the SBA OHA Valiant II Decision was issued in August 2011. (*See* Manelli Aff. ¶¶ 23–33). As Defendants only submitted bids and invoices before August 2011, "Defendants did not persist in presenting claims for payment that [Marine Construction] knew the government did not owe." (Defs.' Mot. 20).

Relator disagrees with Defendants' categorization of its theory of liability, maintaining its claims are based upon an express false certification theory. (*See* Relator's Resp. 4 n.1). It is unnecessary to address the parties' disagreement on this point, as any potential distinctions do not affect the Court's analysis. Instead, it is sufficient that *McNutt*, the case Defendants principally rely upon, does not support their argument. In the brief five-page opinion, the Eleventh Circuit considered an interlocutory appeal regarding "whether a violation of the Anti-Kickback Statute . . . can form the basis for a claim pursuant to the [FCA]." *McNutt*, 423 F.3d at 1258–59. In answering in the affirmative, the Eleventh Circuit stated:

> When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the [FCA], for its submission of those false claims . . . . The violation of the regulations and the corresponding submission of claims for which payment is known by the claimant not to be owed make the claims false under sections 3729(a)(1) and (3).

*Id.* at 1259 (internal citation omitted).  While Defendants place particular emphasis on the phrase "persists in presenting claims," the phrase does not support Defendants' preferred meaning. *McNutt* simply does not stand for the proposition that a relator must show a persistent presentation of claims, particularly when the plain language of the FCA imposes liability for the knowing presentation of *a* false claim.  *Cf. Badr*, 2013 WL 3120204, at *13.

Instead, "[t]he principle underlying liability under the [FCA] is that the government should[ not] knowingly be asked to pay a sum it would[ not] have paid with full information." *U.S. ex rel. Osheroff v. Tenet Healthcare Corp.* No. 09-22253-CIV, 2013 WL 1289260, at *4 (S.D. Fla. Mar. 27, 2013) (discussing *McNutt*).  Defendants implicitly agree if they knew Marine Construction was not an eligible SDVO SBC when they bid and submitted invoices on the Valiant II Contract, they would have run afoul of the FCA.  (*See, e.g.*, Defs.' Reply 10 ("Once [Marine Construction] had knowledge that it was ineligible to claim SDVO SBC status, no offers were made on any subsequent SDVO SBC contract.")).[11]  As a result, it must be determined whether the material facts show Defendants did not know Marine Construction was not a valid SDVO SBC when it was represented as such to the government.  This brings the Court to Defendants' second argument regarding the knowledge requirement.

Defendants assert the Affidavit of Dennis Manelli establishes Defendants did not knowingly make false representations of Marine Construction's SDVO SBC status.  (*See* Defs.' Mot. 16–18).  Manelli explains that as the General Counsel for Marine Construction, Hendry Corp., and Gulf Marine, he was involved in restructuring Marine Construction in order to "qualify [Marine Construction] as a SDVO SBC under the applicable federal statutes and

---

[11]  Defendants make no argument regarding the applicability of the "Government Knowledge Inference" discussed at length in *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 951–57 (10th Cir. 2008); thus the Court does not address it.

regulation." (Manelli Aff. ¶ 14; *see id.* ¶ 3). Prior to this restructuring, Marine Construction was an "empty shell corporate entity" (*id.* ¶ 12), and all membership interests were wholly owned by Cimino (*see id.* ¶ 10). On December 1, 2010, Marine Construction was reorganized such that Rogers owned 51% of Marine Construction and Hendry Corp. owned the remaining 49%. (*See id.* ¶¶ 11, 14). Rogers is and was a service-disabled veteran, and his "member contribution to [Marine Construction] consisted of his significant industry experience, know-how, and time." (*Id.* ¶ 16; *see id.* ¶¶ 18–19). In addition, as a result of Manelli's belief that Marine Construction was a qualifying SDVO SBC, Marine Construction filed a detailed response to the bid protest and appealed the July SBA Determinations. (*See id.* ¶¶ 21–24). Further, despite the pending bid protests, the Coast Guard permitted Marine Construction to continue to perform work and be paid under the Valiant II Contract. (*See id.* ¶ 22).

Defendants maintain because they restructured Marine Construction while actively consulting and involving their General Counsel "with the express purpose that the SDVO SBC regulations (including the control requirements) would be satisfied," Defendants had no actual knowledge that their representations were false, and they similarly did not act in deliberate or reckless disregard of the regulatory requirements. (*See* Defs.' Mot. 17–18). Instead, the only record evidence establishes Defendants' representations "were made in a good-faith effort to comply with the SDVO SBC Program regulations." (Defs.' Reply 6).

Relator insists Defendants' knowledge of the falsity of the representations can be inferred from the circumstances surrounding the representations. Such circumstantial evidence includes: (1) the timing of the reorganization of Marine Construction just after Hendry Corp. was forced to withdraw its bid on the Valiant I Contract due to Relator's bid protest; (2) Hendry Corp.'s acts in supplying Marine Construction with funding, employees, and office space; and (3) Rogers's

status as a Hendry Corp. employee whose salary was paid by Hendry Corp., not Marine Construction.  (*See* Relator's Resp. 14–16; Relator's Mot. 14).

Certainly, the Court is "initially struck by what is not in the record.  For instance, [R]elator[] identif[ies] no deposition testimony from any [D]efendant relevant to the issue of scienter.  Nor did [R]elator[] submit any such testimony in response to [D]efendants' summary judgment motion." *Burlbaw*, 548 F.3d at 949 (footnote call number omitted).  As Defendants suggest, this is apparently because Relator took "not one single deposition in this case."  (Defs.' Reply 3).

Nevertheless, courts generally "hesitate to grant summary judgment when a case turns on a state of mind determination."  *U.S. ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 231 (5th Cir. 2008) (citation omitted).  Moreover, "[c]redibility determinations at the summary judgment stage are impermissible."  *Moorman v. UnumProvident Corp.*, 464 F.3d 1260, 1266 n.1 (11th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).  A jury could credit Manelli's testimony and find Defendants were simply making a good faith effort to comply with the applicable regulations, thereby negating the knowledge requirement.  By the same token, a jury could discredit Manelli's testimony, and find the circumstances surrounding Marine Construction's reorganization and bidding — including Hendry Corp. retracting its initial bid on the Valiant I Contract to simply have Marine Construction later bid in its stead on the Valiant II Contract — establish Defendants knowingly misrepresented Marine Construction as an SDVO SBC.  Whether Relator has failed to establish the knowledge requirement turns on a credibility determination which the Court will not make by way of summary judgment in favor of Defendants.

CASE NO. 11-23582-CIV-ALTONAGA/Simonton

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1.  Relator's Motion for Summary Judgment **[ECF No. 126]** is **DENIED**.

2.  Defendants' Motion for Summary Judgment **[ECF No. 124]** is **GRANTED** in part

    and **DENIED** in part.

**DONE AND ORDERED** at Miami, Florida, this 26th day of June, 2013.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record